The District Court erroneously denied Joshua Brown's motion to suppress evidence stemming from the traffic stop of his orange motorcycle on July 18, 2020, in Cedar Rapids, Iowa. This case presents, in my view, an interesting question, and that question is, just how suspicious is it when a motorist is operating a vehicle that is a different color than motor vehicle registration records would suggest that it should be? The District Court in this case concluded that that color discrepancy between the actual color of Mr. Brown's motorcycle versus registration records was enough as a primary basis for a stop to support reasonable suspicion of possible theft or a registration-related violation. Briefly I'll go over some of the material facts here in my limited time. This is a stop that occurred just before 5 a.m. again in Cedar Rapids, Iowa's second-largest city. It occurred in a neighborhood adjacent to Interstate 380. This particular officer in question did not observe Mr. Brown commit any traffic violations. He didn't know it was Mr. Brown on a motorcycle. What he saw was an orange motorcycle at an early hour, and he was just curious, so he did a U-turn, sped up. If you watch Exhibit 1, the government's exhibit at the suppression hearing, the dash cam video you can see he speeds up quite a bit to catch up with Mr. Brown to see what was going on. He gets close enough that he can ascertain the license plate. He calls that license plate in, and he hears back from dispatch that that particular license plate corresponds to registration for a blue, not an orange, 2004 Harley-Davidson motorcycle. The officer can't tell, according to him, what the make or model of the motorcycle that Mr. Brown was driving, but nonetheless, primarily based on that color discrepancy, he opts to conduct a traffic stop. This traffic stop occurs when Mr. Brown pulls into the property at 2003 3rd Street Southwest, a house in a neighborhood the officer was generally familiar with. Soon into the stop, the officer finds that Mr. Brown is in unlawful possession of a firearm, and that's how we get to where we are. Mr. Brown's argument is that a color discrepancy between the actual color of the vehicle and registration records is not a primary basis for reasonable suspicion, and thus the district court erred in denying the motion to suppress. Now, this is not an issue that this court has dealt with in the past, but as you can see from the party's briefing, many courts have, mostly state courts, and some come out in Mr. Brown's direction, and some certainly come out in the government's direction, so to some degree, this court's decision may be dependent on which set of precedents it finds most compelling, but I do think this court has dealt with an analogous situation that I think provides support for Mr. Brown's position, and that is in the Clinton versus Garrett and Macklemore cases that I cited in my reply brief. There, the issue was whether an officer's inability to make out the information on an in-transit sticker in a high-crime area was enough for reasonable suspicion for a traffic stop, which certainly most stops happen in Iowa as well, and this court held that that is not enough for reasonable suspicion. Here's why I think that's analogous. There may be nefarious reasons that an officer can't ascertain the information on an in-transit sticker. The vehicle could be stolen, the motorist could be trying to obscure the information, it could be up to no good, but there are also, of course, non-nefarious reasons why an officer might not be able to make out the information on an in-transit tag, just possibly not be able to see it, and the same holds true with a color discrepancy. As was established at the suppression hearing, there are any number of innocent reasons why there may be a discrepancy between the actual color of the vehicle and what the officer is seeing as the actual color of the vehicle, because some vehicles have multiple colors, versus registration records, and there may also be nefarious reasons for that color discrepancy. But as a primary basis for a stop, that is not enough alone. It's not suspicious enough on its own, at least without a discrepancy with respect to the make or model of the vehicle, which we didn't have here. The officer didn't have that information. That is not enough as a primary basis for a traffic stop. Now, the government makes much of, and of course the district court did too, the experience that this officer testified to, both his own experience, but even more so, I think, the officers in Cedar Rapids with respect to either suspected motor vehicle theft in this area around the traffic stop, or registration-related violations. But I would submit that the court should not make much of that information. This was not a terribly experienced officer who made the traffic stop. I think he'd been with the force for about three years as of when this stop occurred. But it was clear, if you watched Exhibit 1, it's clear that this officer was intent on where he stopped. And the fact that the stop occurred at 2003 3rd Street Southwest and there was prior activity there is of minimal importance because at the time that the officer made the stop, he knew of no connection between those prior cases and this particular motorcycle. He wasn't following up on the report of the stolen orange motorcycle. He didn't know it was Mr. Brown on the motorcycle. So those prior stops really had nothing to do with the basis for this officer's stop. But isn't that... Aren't you getting over into the area of subjective knowledge of law enforcement rather than objective? Well, the officer... I mean, law enforcement was aware. It was known to law enforcement that it was a high-crime area. There have been a number of cases within the past year where license plates did not match the vehicles and other cases involving stolen motorcycles at almost the very same location. I mean, that was known to law enforcement, wasn't it? And if this officer had been following up on any of those cases with any information that was particularized to Mr. Brown, then, yeah, there would be a basis for the stop. But he wasn't doing that here. And moreover, I would disagree with the notion that this was necessarily a high-crime area. As I said in my brief, the government went back about a year from this traffic stop and found various stops that occurred a mile or about a mile or even in some cases more than a mile away from where this traffic stop occurred. Two things. That doesn't matter much if we don't know about proportionality. If we don't have a sense that, more often than not, a person driving through this neighborhood with a color discrepancy in their vehicle versus registration records is engaged in criminal activity. Because it doesn't mean much if officers stopped or approached 10 different people and they were engaged in criminal activity and they fit this profile if we don't know if the officer stopped 300 other people and they found that there was nothing nefarious about the circumstances presented. Did you ask the officer that question? Council below asked a lot of questions about the officer's awareness of certain statistics and understandably the officer said he didn't necessarily know where Cedar Rapids fit in with respect to other places. Well, and what I'm talking about, doesn't the government say at least 10 and it wasn't Officer Moore's testimony at least 10, right? Something like that. That's not really important. Did defense counsel ask the follow-up of how many does that relate to? I don't remember precisely, but there are a number of questions about this. It's fine, your time is short. Yeah, we'll find out. Yeah, certainly. So, and the second point is this again, this stop occurred in Cedar Rapids, Iowa, second largest city in Iowa, right next to an interstate. So I don't know that this is a high crime area because I don't know how those 10 stops fit in with the rest of Cedar Rapids or how they fit in with the rest of Iowa or the rest of the nation. I would be nervous if it was enough for the government to defend a stop if they're able to go back a year and find a bunch of stops that are kind of similar that resulted in criminal activity if we don't know how often innocent people fit that same profile. And that's why I don't think there was reasonable suspicion. I know it's not particularly relevant, but I'm just curious, was it ever determined whether this was a registration problem or it had been a repainted problem? So, I believe the bottom line, Mr. Sherman, correct me if I'm wrong, was that Mr. Brown admitted that he kept the old license plates on the motorcycle because he was a bar driver. And I don't know how that fit in, but that's what I got from the transcript of the hearing. Okay. Are there further questions? I deserve the right to attend for a moment. Very well. Thank you. May it please the court, counsel. My name is Mark Tremble, Assistant U.S. Attorney, Cedar Rapids, Iowa. I'd like to start with, there's a lot of focus here on repainting vehicles, but Officer Moore testified there are a number of reasons why there could be a color discrepancy, five reasons why plates could be on the wrong vehicle. And consider how a person's actions could lead to each of these things. One reason is the registration had expired. So a person has a plate on the vehicle after his registration expires. Second is the person has a suspended, revoked, or barred license. You can't renew a license unless it takes a plate from another vehicle. That person does that. Third thing is a person can move plates to a new vehicle before the transfer paperwork was done. So when you have an old vehicle with a license plate, you take the license plate off the old vehicle, you move them on to a new vehicle, you've got a certain number of days under the Iowa code, but the code says you have to pay fees, you have to go to the treasurer's office, you have to get a registration and title. If the person moves the plate over and doesn't go through those things, then that could cause that discrepancy. A person could buy multiple vehicles, both plates on the wrong vehicles. That would not be an intentional crime, it would be an accident. Nevertheless, it would be a person's action. And then a person could also steal a vehicle and put it on different plates. There's also a couple of circumstances, Officer Testify, too, where plates could be on the right vehicle, even though the color discrepancy exists. One is a person could repaint the vehicle and not report that to the DOT. Now there are, the magistrate court acknowledged there's some administrative regulations on that, but there's no law requiring that a person report to the DOT. So yes, a person could repaint the vehicle, not require under Iowa laws, not a crime, not report that to the DOT. Also, the wrong vehicle color could be provided to the DOT. That could be by the person, or it could be that that was just on the record already, or I think the defense investigator also said that she had talked to someone at the DOT who said they could press the wrong button as well. But overall, these are a number of circumstances where an action taken by a person leads to a color discrepancy. Not, you know, it's different from the Florida Tuber case where it said, well, this is like someone walking in a high crime area after midnight. That, isn't that just saying someone could be in a bad circumstance? There's actions that could be taken. The officer doesn't know when he's stopping the vehicle, which of those circumstances occurred. In this case, we have more than that. Officer Moore had testified about ten cases where he had been involved, and then three cases that he was familiar with and other officers were involved in. Of all those cases, he talked about four cases at that specific address on 3rd Street Southwest that involved, some involved stolen vehicles, other registration color discrepancies. And then he talked about color discrepancies in different locations other than that address. Thefts, three cases referenced on page 41 of our brief. And then also, violations of Chapter 321 of the Iowa Code. There's six of those cases on page 41 of our brief. I'd like to address- Does the record show whether he was aware of those instances at the time of this stop, or is that information he gathered after the fact? I don't recall precisely if there's testimony about which specific ones he recalled. I know the defense cross-examined him about did you have all of these in your mind all the time, and he basically said, we do have a list of stolen vehicles that are out that we go over when we begin our shift. I talked to other officers. I'm aware of some of these cases, but I don't recall if there's specifically, I knew about this case. I did not know about this case.  Regarding the McLemore and Garrett cases, I'd like to respond to that. Garrett summarized McLemore, this is on page 1141, that's where the officer saw a vehicle with a dealer advertising plate instead of a rear license plate, and a temporary paper card taped to the inside of the left rear window. Officer radioed another officer that she had seen no violations yet. They asked about the card in the back window. The officer said, you can see a plate, but you can't read what's on it. After she says that, the other officer says, there you go, and then she makes the stop. Well, this court determined that Iowa Code said, under the Iowa Code, it is not a violation not to be able to read a tag. If the tag is fraudulent, that's different, but not being able to read it is not a violation. This court in Garrett, citing McLemore, said, we focused on the fact that Officer DelValle relied on her inability to read the tag rather than her observation of a possible legal defect in deciding to stop the vehicle. McLemore stands for the proposition that it is a constitutional violation to stop a vehicle merely because it has a temporary tag without a particularized basis for suspecting the tag is in violation of Iowa law. Iowa Code specifically provides for a temporary tag. It says you have a dealer plate, you can have a temporary tag, and this statement here is that you can't stop someone simply because there's a temporary tag, right, which is legal, which is provided for in Iowa law. She couldn't read the tag, not being able to read it, whatever the other legibility requirements are that didn't apply there. In Clinton v. Garrett, the district court noted that the officer admitted that he stopped the vehicle because he couldn't see what was on the tag, not because of a mistaken belief that it was, blank, a fraudulent. This case is different. In this case, there's no question that Officer Moore saw an orange motorcycle and came back to a blue Harley Davidson, okay? There's no question factually about that discrepancy, and the issue is whether we are going to focus on one innocent explanation that the defense argues is innocent, that it's repainting the vehicle and not reporting it to DOT, or whether we look at all of the different possibilities that the officer was aware of based on his prior experience. There are cases on both sides of this. On the cases on the defense side of this, some of them are limited just to theft, so they don't really look at state vehicle codes on these. Many of these cases focus on the possibility of a repainting, and some of these cases also say that the government didn't provide enough evidence, didn't provide enough training experience to the officer, which certainly we provided that here. As I noted before, there is a difference between a circumstance like walking after midnight and someone who takes an action with respect to a license plate or a car, and that action causes the color discrepancy. There's a lot of talk about statistics here, and the defense attorney asked a lot of questions to Officer Moore about statistics on thefts. Well, this would be very difficult if this were our standard. If the standard were, would it be theft convictions, would it be theft charges? What about if the underlying reports were the theft? Then you have to look at the Iowa vehicle. You have to get 321.98, 321.99, 321.100. How many cases did you have where there was a color discrepancy that led to that? Would you again be looking at convictions? Would you be looking at pleas? Would you be looking at the fact that it was underlined but ended up not being charged? And then that doesn't account for regional issues about are there statistics on a certain part of town. It's going to be very difficult for an officer on the street to be able to have all those available if our reasonable suspicion determination is based on statistics, like the defense was asking the officer about on the stand, where the officer didn't have answers to the question of those statistics. In this case, we not only have the color discrepancy, we also have the detailed testimony about his experience and when he talked to other officers about the correlation between that and theft, and also the violations of the Iowa Vehicle Code, and significantly his testimony about stolen vehicles and registration discrepancies at the specific address on 3rd Street Southwest. So based on all of that, there was reasonable suspicion in this case. The court does not have any other questions that we would ask of the court of argument. There are none. Thank you, Mr. Tremmel. Mr. Hanson, we'll give you a couple of minutes. Thank you, Your Honor. In response to a question from you, Judge Brenner, to Mr. Tremmel with respect to what this officer had in his head at the time of the stop, at pages 50 and 51 of the suppression hearing transcript, defense counsel asked him if he had these specific cases in mind when he conducted the traffic stop, and he said no. He was operating based off of a general impression of the area and his experience. So that's no different than the high crime rationale that we normally see in these cases. This officer wasn't operating, again, like I said before, based off of, followed up on specific cases. With respect to Mr. Tremmel's attempt to distinguish McLemore and Clinton v. Garrett, clearly these are different alleged violations that form the basis for the stop in McLemore and Clinton v. this case. But it's analogous because, as Mr. Tremmel said, it's not illegal to have, necessarily, a temporary tag that an officer cannot see. An officer just can't pull you over to ascertain whether it's legitimate or not. The same is true here, as Mr. Tremmel admitted. It's not illegal to have a color discrepancy between your vehicle and what registration records say, because you're not required to update that information with the Iowa DOT. So, by extension, you're not allowed to pull over the motorist and ask questions later to ascertain whether this is a legitimate reason for a color discrepancy or whether there's some illegal behavior going on, because it's just not suspicious enough. And I think there's some aspect in the district court's opinions below of, well, this officer observed this color discrepancy. It could have been for nefarious reasons. What is he to do? Is he just to ignore it? And the answer is no. He could have easily waited 45 minutes until the sun rose, told other officers what he observed, and gathered additional bases, additional particularized bases to suspect Mr. Brown wrongly. As it is, he wasn't entitled to a federal stop based on the information that he had and the district court's order to deny the motion, so that should be reversed. Very well. Thank you, counsel. We appreciate your appearance and argument today. The case is submitted and we'll decide it in due course.